UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) 2:11-CR-00409-LRH-CWH |
| Plaintiff, | ) |
| | ) <u>ORDER</u> |
| vs. | ) |
| JAWAD "JOE" QUASSANI, | ) |
| Defendant. | ) |

Before the Court are the Government's Motions in Limine to exclude evidence relating to (1) Defendant Jawad "Joe" Quassani's ("Quassani") immigration status, potential sentence and any collateral effects of conviction (Doc. #36); (2) the improper use of FBI Form 302 memoranda (Doc. #37); and (3) lender negligence (Doc. #38). Quassani has responded (Docs. #40, #39, #41 respectively), and the Government has replied (Docs. #43, #42, #45 respectively).

**I.    Factual and Procedural Background**

In early 2007, Quassani, along with co-conspirators Anita Mathur and Shirjil Qureshi, allegedly committed and conspired to commit wire fraud and mail fraud. The object of the scheme was to fraudulently obtain mortgage loans for the purpose of keeping some of the loan proceeds for their personal and unauthorized use. To carry out their alleged acts the co-conspirators recruited an individual, "G.B.," to act as a "straw buyer." The co-conspirators then allegedly made or caused to be made false and fraudulent representations and omissions in G.B.'s loan applications and submitted the applications and related documents to lenders to finance their

purchase of the two homes. These applications allegedly misstated the contract price, income, rent, assets, and intent of the buyer to reside at the property. Several mortgages were obtained in connection with two properties: (1) Raveno Bianco, Las Vegas, Nevada; and (2) Moraine Drive, Henderson, Nevada. Following the closings for these properties, loan proceeds were allegedly disbursed to Quassani and his co-conspirators for their benefit, unbeknownst to the lenders.

Quassani was indicted on November 29, 2011 on five counts: (1) conspiracy to commit wire fraud and mail fraud; (2) wire fraud; (3) wire fraud; (4) mail fraud; and (5) mail fraud. Thereafter, the Government filed the present pretrial motions in limine seeking to exclude certain evidence at trial.

## II. Legal Standard

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. Stephanie Hoit Lee & David N. Finley, *Federal Motions in Limine* § 1:1 (2012). The decision on a motion in limine is consigned to the district court's discretion — including the decision of whether to rule before trial at all. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless "the evidence [is] inadmissible on all potential grounds." *See, e.g., Indiana Insurance Co. v. General Electric Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). Even then, rulings on these motions are not binding on the trial judge, and they may be changed in response to developments at trial. *Luce v. United States*, 469 U.S. 38, 41(1984).

## III. Discussion

### A. Government's Motion in Limine #1 (Doc. #36)

The Government's first motion in limine seeks to exclude evidence relating to (1) Quassani's immigration status; (2) his potential sentence; and (3) any collateral effects of his conviction at trial. The Government contends the inclusion of the aforementioned evidence is irrelevant in determining Quassani's guilt or innocence and should be excluded under Fed. R.

Evid. 402. Alternatively, the Government argues that the evidence is unfairly prejudicial under Fed. R. Evid. 403.

The Court has reviewed the motion and agrees with the Government's contention that evidence of Quassani's immigration status, potential sentence, and any collateral effects of a conviction is irrelevant in determining Quassani's guilt or innocence. Consequences flowing from a guilty verdict are irrelevant to the jury's task as fact-finder. *Shannon v. United States*, 512 U.S. 573, 579 (1994); *Rogers v. United States* 422 U.S. 35, 40 (1975). Therefore, it is inappropriate to inform the jury of these consequences. *See United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992) ("it is inappropriate for a jury to...be informed of the consequences of their verdict"). Further, immigration status is irrelevant where its inclusion could encourage jury nullification, has no bearing on determination of guilt or innocence, and speaks only to possible collateral effects following a conviction. *See United States v. St. Rose,* No. 11-CR-349, 2012 WL 1107659, at *1 (E.D.N.Y. Apr. 2, 2012). Accordingly, the Government's Motion in Limine #1 (Doc. #36) is granted.

**B. Government's Motion in Limine #2 (Doc. #37)**

The Government's second motion seeks to exclude interview summaries prepared by Federal Bureau of Investigation agents, known as "FBI 302" reports, for the purposes of impeaching witnesses during cross-examination, publishing the contents of these summaries to the jury, or suggesting to the jury these are statements of the witnesses.

The Jencks Act, in order to provide for full and fair cross-examinations, requires the United States to provide the defense with any statements made by the witness relating to his or her testimony after that witness has testified on direct examination. 18 U.S.C. § 3500. A statement for the purposes of the Jencks Act is: "(1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C. § 3500(e).

As subsection (3) of 18 U.S.C. § 3500(e) does not apply to FBI 302s, an FBI 302 can only be a statement if it is either adopted or approved by the witness or "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously." 18 U.S.C. § 3500(e)(1)-(2). FBI 302s have been held inadmissible for impeachment where they "represent the investigator's selections, interpretations and interpolations." *Palermo v. United States,* 360 U.S. 343, 350 (1959); *United States v. Claiborne,* 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent...the agents' selection of certain information...the district court properly characterized the summaries as non-Jencks Act material"), *abrogated on other grounds by Ross v. Oklahoma*, 487 U.S. 81 (1988); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that "the written statement of the FBI agent was not attributable to [the witness]" and thus it was "properly rejected as a prior inconsistent statement"). However, if the FBI 302s are adopted by the witness as accurate, then they may be admitted and used for impeachment. *See United States v. Rubin*, 609 F.2d 51, 62 (2d Cir. 1979) (holding a statement could be used for impeachment where the witness adopted the interviewer's notes as accurate and in accord with his memory following the interview).

The Government and Quassani disagree as to whether the FBI 302s are witness statements. Resolving this question requires individual assessment of the FBI 302s at trial. Therefore, at this juncture, a blanket exclusion of all FBI 302s is inappropriate. Accordingly, the Government's Motion in Limine #2 is denied.

**C. Government's Motion in Limine #3 (Doc. #38)**

The Government's final motion seeks to exclude evidence of lender negligence. Specifically, the Government requests the exclusion of evidence or argument that: (1) the lending institutions that made the loans at issue were negligent in their failure to identify false statements in the loan applications submitted by Quassani and his co-conspirators; and (2) the lenders would have granted the loans whether or not they had been aware of the false statements. Doc. #38. The Government contends admission of such evidence is either irrelevant under Fed. R. Evid. 402 or unfairly prejudicial under Fed. R. Evid. 403.

///

4

The Government must prove a defendant's falsehoods were material in order to sustain a conviction for wire fraud or mail fraud. *Neder v. United States*, 527 U.S. 1, 25 (1999). Satisfying the materiality requirement does not require the Government prove actual reliance or damages. *Id.* at 24-25. False statements are material where they have "natural tendency to influence, or [are] capable of influencing" a lender. *United States v. Gaudin,* 515 U.S. 506, 509 (1995) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). In this context, a court evaluating such a statement employs an objective test looking at "the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end." *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (quoting *United States v. Facchini*, 832 F.2d 1159, 1162 (9th Cir. 1987)). For this reason, "it is no defense...that the victim of the fraud was negligent, gullible, or incompetent." *United States v. Maximov*, No. CR10-822, 2011 WL 4915162, at *2 (D. Ariz. Oct. 17, 2011). "What matters is whether the misrepresentation had a 'natural tendency to influence the bank or was not capable of influencing the bank.'" *United States v. Haischer*, No. 2:11-CR-00267-MMD-CWH, 2012 WL 5288006, at *2 (D. Nev. Oct. 24, 2012) (quoting *United States v. Rashid,* 383 F.3d 769, 778-79 (8th Cir. 2004)).

However, in order for a jury to make a determination of materiality, it must know something about the lending practices of the lending institution. *Maximov*, 2011 WL 4915162, at *3. While the defendant cannot rely on loose lending practices as a defense to his fraudulent conduct, the defendant can challenge the government's evidence regarding applicable lending standards and thereby challenge the allegedly fraudulent statement's materiality. *Id.* "Evidence of lender policies and practices that do not consider certain facts — such as those allegedly misrepresented by [the defendant]— is relevant and admissible to show that the facts were not material." *United States v. Somee*, No. 2:10-CR-00273-MMD-CWH, 2012 WL 5473153, at *2 (D. Nev. Nov. 9, 2012).

Therefore, the court shall grant the Government's Motion in Limine #3 (Doc #38) with respect to the introduction of evidence of lender negligence as it pertains to materiality. However, the court notes that evidence pertaining to lender practice or policy may be admissible at trial for the purposes of determining materiality.

IT IS THEREFORE ORDERED that the Government's Motion in Limine #1 (Doc. #36) and Motion in Limine #3 (Doc. #38) are GRANTED.

IT IS FURTHER ORDERED that the Government's Motion in Limine #2 (Doc. #37) is DENIED.

IT IS SO ORDERED.

DATED this 6th day of June, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE